UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ABRAHAM QUINONES,

              Plaintiff,

   -vs-

CAROLYN W. COLVIN, Commissioner of
Social Security,

              Defendant.

**DECISION AND ORDER**
**No.6:13-cv-06603(MAT)**

---

## I. Introduction

Represented by counsel, Abraham Quinones ("Plaintiff") brought this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

## II. Procedural History

On April 18, 2011, Plaintiff filed a claim for DIB, alleging disability since March 8, 2010, due to low back pain and neurological symptoms in his legs following an accident at work. T.163.[1] After the claim was denied, Plaintiff requested an administrative hearing. T.64; 73-84; 85-87. On May 15, 2012,

---

[1] Citations to "T." refer to pages in the certified copy of the administrative transcript, filed by the Commissioner in connection with her answer to the complaint.

Plaintiff and his attorney appeared before Administrative Law Judge Michael W. Devlin ("the ALJ") for a hearing in Rochester, New York. See T.41-63. Peter Manzi, a vocational expert, also testified.

On August 3, 2012, the ALJ issued a decision finding that Plaintiff was not disabled under the Act. T.30-36. Plaintiff submitted additional medical records to the Appeals Council, which denied Plaintiff's request for review on September 13, 2012, making the ALJ's decision the final decision of the Commissioner. T.1-5; 24-26.

This timely action followed. Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**III. Summary of the Relevant Medical Evidence**

    **A.   Records Submitted to the ALJ**

On May 10, 2010, Plaintiff reported to Lifetime Health Medical Group with complaints of lower back pain. See T.235-37. Plaintiff told attending physician Dr. Richard Dudrak that he had injured his lower back while he was lifting a heavy item at work on May 8, 2010. Plaintiff previously had back pain, but at the time of the incident, he had a sudden onset of pain radiating down his left leg. Plaintiff had positive straight leg raising test, and Dr. Dudrak assessed left lower back strain. For purposes of Workers' Compensation benefits, Dr. Dudrak stated that Plaintiff

could return to his job as a laborer on May 17, 2010, with no restrictions.

On October 4, 2010, Plaintiff saw orthopedic surgeon Andrew Wensel, M.D., complaining of continued back pain following his May 2010 injury. See T.290-91. His symptoms were aggravated by walking, sitting, standing, using the bathroom, bending, and lying down. Physical therapy, chiropractic care, and other treatments had not been helpful. Plaintiff had a positive straight leg raise on the left. Plaintiff's MRI showed the following: degenerative discs at L2-L3 and L4-L5; a herniated disc at L4-L5 completely effacing the lateral aspect of the spinal central canal and the course of the lateral roots; and degenerative spondylosis at multiple levels of the lumbar spine. Dr. Wensel recommended a left L4-L5 discectomy since Plaintiff's symptoms had persisted despite conservative care. Plaintiff underwent surgery with Dr. Wensel on December 8, 2010. T.257.

Plaintiff saw Dr. Wensel in follow-up on December 20, 2010; December 30, 2010; and January 27, 2011. See T.286-88. At that time, Plaintiff was taking ibuprofen for pain. Dr. Wensel stated that Plaintiff "may have the ability to return to work but overall probably has a significant chance of having a reinjury of his back given his lumbar disk problem currently." T.286.

Due to his ongoing pain complaints, Plaintiff sought treatment at the University of Rochester Medical Center's Pain Management

Clinic from April 2011, through January 2012, where he saw pain management specialists Drs. Nagendra Upadhyayula and Armando Villareal, as well as Nurse Practitioner Michelle Duggan ("N.P. Duggan"). See T.292-301, 329-38. On April 7, 2011, Plaintiff complained of focal tenderness over the lumbar spine at approximately L1 through L5 into the S1 region. His lumbar spine exhibited a full ROM and straight leg raising tests were negative.

Plaintiff underwent facet injections on April 14, 2011 and May 9, 2011, for his right lumbar facet arthropathy. At his May 25, 2011 visit with Dr. Upadhyayula, Plaintiff reported that on most days following the injections he had no pain. T.295. Dr. Upadhyayula assessed post-laminectomy syndrome, and primary axial pain with radicular features to the anterior aspect of his thigh very intermittently, worse with ambulation. T.295. On June 28, 2011, Plaintiff reported continued improvement with aquatherapy, but complained of increased pain with traditional physical therapy. T.338.

In July 2011, independent medical examiner ("IME") Hossein Hadian, M.D. examined Plaintiff at the request of his Worker's Compensation insurance carrier. See T.306-12. Plaintiff complained of lower back pain radiating to his right leg. He had a near-normal gain, full muscle strength and a full range of motion ("ROM"), and normal reflexes and sensations throughout his arms. Plaintiff's hips and legs had full ROM with no tenderness; his cervical spine

had full ROM with no spasms, trigger points, or tenderness; and his lumbar spine exhibit a limited ROM with marked spasms and tenderness. T.309-10. Straight leg raising tests were positive bilaterally. Dr. Hadian assessed lumbar spondylosis without myelopathy and secondary myofascial pain, and lumbar facetogenic pain. Dr. Hadian opined that Plaintiff was temporarily 25% disabled for Worker's Compensation purposes, and that he could return to work that did not require him to lift more than 15 pounds or engage in repetitive movements that would put stress on his lower lumbar spine. T.311.

On June 29, 2011, Plaintiff was treated by N.P. Duggan at the Pain Management Clinic. See T.293. He was progressing in his aquatherapy, but still experienced pain with traditional physical therapy. N.P. Duggan's examination revealed pain on palpation over the surgery scar, pain in the bilateral facet region, pain on the left when bending to the right, and pain on the left upon lateral rotation and extension to the right.

On September 26, 2011, pain management specialist Dr. Villareal noted that Plaintiff had grossly intact motor strength and a steady gait. See T.336-37. Although his radicular symptoms had improved since the discectomy, Plaintiff continued to have axial back pain with some radiation into his lower extremity, to the knee. Having reviewed the previous MRI, Dr. Villareal noted that it "clearly show[ed] a lumbar disc herniation on the left at

L4-L5 clearly compressing the L5 nerve root" with "evidence of some posterior column disease" which was "mild to moderate." T.336. Plaintiff received a paravertebral facet injection on October 17, 2011. T.333.

On September 28, 2011, Physical therapist Donald McGravett ("P.T. McGravett") evaluated Plaintiff at the request of his Worker's Compensation insurance carrier. See T.352-58. P.T. McGravett observed that Plaintiff's gait was antalgic; and that he could walk 1051 feet continuously, sit for 86 minutes at a time, stand for 53 minutes at a time, climb 2 flights of stairs occasionally, lift 20 pounds occasionally, and lift 10 pounds frequently. P.T. McGravett opined that Plaintiff could perform "light" work. T.357.

On November 9, 2011, Plaintiff saw N.P. Duggan at the URMC Pain Clinic, reporting that his worst pain level in the previous 24 hours had been 8 out of 10 and that the best level was 6 out of 10. At the time of his appointment, he had pain bilaterally in the lumbar region, with radiation to his legs, and which was intensified by sitting, walking, and moving.

### B. Evidence Submitted to the Appeals Council After the ALJ's Decision

On January 3, 2012, Plaintiff saw N.P. Duggan for his lower back pain, and was taking ibuprofen, Cymbalta, and omeprazole. T.329. On March 20, 2012, Plaintiff was treated by Dr. Jose E. Lopez at the URMC Pain Clinic. T.350.

Physician's assistant Doug Mincer ("P.A. Mincer") treated Plaintiff on August 24, 2012, for complaints of back pain. See T.360, 367-69. P.A. Mincer diagnosed Plaintiff with lumbar disc degeneration, lumbar radiculopathy, and lumbar strain. P.A. Mincer opined that Plaintiff could perform work that included no lifting, pushing, or pulling of more than 10 pounds; and no repetitive bending or twisting of the back. T.360, 368, 372, 375. For purposes of Worker's Compensation, P.A. Mincer assessed a 75% temporary disability, and indicated that Plaintiff's impairments were causally and proximally related to his work-related injury.

On September 12, 2012, Plaintiff underwent an MRI. See T.364-65. At L2-L3, imaging revealed "stable", "degenerative disc changes with posterior disc bulging and small-to-moderate sized central subligamentous disc extrusion. . . ." T.364. There were "[r]elatively short pedicles" and "mild central canal stenosis, but no significant neural foraminal stenosis." Id. At L4-L5, there were "changes of left hemi laminectomy" with "only a small amount of posterior disc bulging", a "tiny amount of left perineural enhancing scar", and "only mild left neural foraminal narrowing associated" with this area. Id.

Plaintiff returned to see P.A. Mincer on September 18, 2012, reporting pain in the midline lumbar region, radiating to both legs; the intensity of the pain was 7 out of 10. Plaintiff was

directed to continue taking acetaminophen (500 mg) and ibuprofen (200 mg). T.371-72.

On October 31, 2012, Plaintiff continued treatment with P.A. Mincer, reporting no improvement in his symptoms. See T.374-75. He declined narcotic pain medication. He had tenderness in the lumbar spine at the level of the paraspinous muscles and pain with ROM testing. P.A. Mincer supported Plaintiff's application for a parking permit or license plate for those with severe disabilities, based on Plaintiff's permanent disability of chronic, degenerative disc disease. T.363.

On June 27, 2013, Plaintiff saw P.A. Mincer, reporting increased achiness, problems performing his activities of daily living, and increased numbness down both legs. T.7-8. Plaintiff rated his pain intensity at 8 out of 10. P.A. Mincer reiterated that Plaintiff's impairments were causally and proximally related to Plaintiff's work-related injury.

**IV. Eligibility for DIB**

Plaintiff, who is under the age of 55 and has insured status, is eligible for DIB if it is determined that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that [the claimant] . . .

cannot, considering his age, education, and work experience, engage in any . . . substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). To determine whether an individual is entitled to disability benefits, the Commissioner employs a five-step sequential analysis. 20 C.F.R. § 404.1520; Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (describing steps).

## V. The ALJ's Decision

The ALJ applied the five-step sequential evaluation as promulgated in the Commissioner's regulations. At step one, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2015, and has not engaged in substantial gainful activity since the onset date of March 8, 2010. At step two, the ALJ determined that Plaintiff has the following "severe impairment": "lumbar spondylosis; post laminectomy syndrome". At step three, the ALJ concluded that Plaintiff's impairment does not meet or medically equal a listed impairment.

At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of sedentary work in that he can occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, and occasionally push and/or pull 10 pounds; he must be permitted to use an assistive device to ambulate to and from a workstation; he

can occasionally climb ramps/and or stairs; he can occasionally balance, stoop, kneel, crouch, and crawl; and he can never climb ladders, ropes, and scaffolds. Plaintiff had past work was as a janitor (DOT #382.664-010; semi-skilled; medium, but performed at the very heavy level) and building repairer (DOT #899.381-010; skilled; medium, but performed at the very heavy level). Given his RFC, Plaintiff no longer can perform his past relevant work.

At step five, the ALJ relied on the VE's testimony to conclude that there exist jobs in the national economy that Plaintiff can perform, such as addresser (DOT #209.587-010, unskilled, sedentary) and order clerk (DOT #209.567-014, unskilled, sedentary). Accordingly, the ALJ entered a finding of not disabled.

**VI.   Standard of Review**

Title 42 U.S.C., § 405(g) authorizes district courts "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When evaluating a denial of disability benefits, the reviewing court may reverse the decision only if the Commissioner committed legal error or if her factual findings are not supported by substantial evidence. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citing 42 U.S.C. § 405(g)). A district court's function thus is not to determine de novo whether

a claimant is disabled. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citation omitted).

However, a district court must independently determine if the Commissioner applied the correct legal standards in determining that the claimant is not disabled. See Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("Failure to apply the correct legal standards is grounds for reversal."); accord Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003). Therefore, the reviewing court first evaluates the Commissioner's application of the pertinent legal standards, and then, if the standards were correctly applied, considers the substantiality of the evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987) (stating that "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles").

**VII. Discussion**

    **A.   Failure to Properly Analyze Listing 1.04(A)**

Plaintiff contends that the ALJ erred at step three when he concluded that Plaintiff's impairments do not meet or equal the severity requirements of Listing 1.04(A).

To satisfy Listing 1.04(A), Plaintiff must establish that he suffers from a disorder of the spine, with

> A. [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 , § 1.04(A). Here, the ALJ summarily concluded that "the record does not contain evidence of the functional limitations or neurological deficits necessary to meet section 1.04 of the listings." T.32. As Plaintiff notes, the ALJ did not analyze, let alone mention, any of the relevant medical evidence regarding Plaintiff's diagnoses of lumbar spondylosis and post-laminectomy syndrome, or the symptoms and deficits caused by these conditions. The ALJ's "one-sentence, conclusory analysis [of the pertinent listed impairment] without any recitation of the facts or medical evidence[,]" Hamedallah ex rel. E.B. v. Astrue, 876 F. Supp.2d 133, 144 (N.D.N.Y. 2012), is "plain error." Id. (citing Morgan o/b/o Morgan v. Chater, 913 F. Supp. 184, 188–89 (N.D.N.Y. 1996) (holding that a one-sentence denial is insufficient to support the determination, especially in light of the evidence to the contrary); see also Kerr v. Astrue, No. 09–CV–01119 (GLS), 2010 WL 3907121, at *5 (N.D.N.Y. Sept. 7, 2010) ("[T]he ALJ's sole discussion of Listing 1.04A consisted of reciting its requirements without any analysis of the medical evidence or Plaintiff's

complaints. The ALJ offered no further explanation of what requirements were not met, or what medical evidence supported his finding.").

Such an error is not harmless where, as here, there is evidence in the record supporting a conclusion that Plaintiff meets or medically equals Listing 1.04(A). See, e.g., Kerr v. Astrue, 2010 WL 3907121, at *5-6. Under Listing 1.04(A), if the ALJ had found nerve root compression he would have then had to consider whether Plaintiff had (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss accompanied by reflex loss, and, because he has alleged lumbar involvement, (4) positive straight-leg raising test involving the lower back. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. Listing 1.04(A)). The medical record contains evidence suggesting that Plaintiff's impairment may meet these criteria. See, e.g., T.281 (May 2011 assessment of post-laminectomy syndrome with primary axial pain with radicular features to the anterior aspect of Plaintiff's thigh); T.336 (September 2011 MRI revealed a left lumbar disc herniation at L4-L5 clearly compressing the L5 nerve root), T.368 (August 2012 diagnosis of lumbar disc degeneration and lumbar radiculopathy[2]); T.310-11 (June 2011 assessment of lumbar flexion

---

[2] "The consequence of nerve root damage (from any cause) is known as a radiculopathy. . . ." http://www.neuroanatomy.wisc.edu/SClinic/Radiculo/Radiculopathy.htm.

limited to less than 80 degrees, positive straight leg raising test, and pain upon bending and rotation to left and extension to right); T.235 (May 2010 notation of weakness in legs); T.353 (September 2011 observation of slow and antalgic gait[3]).

Because the ALJ failed to provide an analysis of Plaintiff's back impairments sufficient to enable this Court to conclude that the step three finding is supported by substantial evidence, remand for further administrative proceedings is warranted. E.g., Kerr, 2010 WL 3907121, at *6 (citing Martinbeault v. Astrue, No. 1:07-CV-1297, 2009 WL 5030789, at *6 (N.D.N.Y. Dec. 14, 2009)).

### B.   Erroneous RFC Assessment (Plaintiff's Point III)

Plaintiff contends that the ALJ's RFC assessment was not based on substantial evidence because the record lacks an opinion from an acceptable medical source outlining Plaintiff's function-by-function limitations. Relatedly, Plaintiff asserts that the ALJ failed to fulfill his duty to compile a complete record by requesting a medical source statement or RFC assessment from one of Plaintiff's treating physicians.

In a 2013 summary order, the Second Circuit rejected a claimant's contention that an ALJ's failure to request an RFC

---

[3] Antalgic gait is defined as "a characteristic gait resulting from pain on weight-bearing in which the stance phase of gait is shortened on the affected side." http://www.medilexicon.com/medicaldictionary.php?t=35907.

assessment from a treating physician automatically always requires a remand. See Tankisi v. Commissioner of Social Security, No. 12-1398-CV, 521 F. App'x 29, 33-34, 2013 WL 1296489, at *3-4 (2d Cir. Apr. 2, 2013). Tankisi is distinguishable because, in that case, there was an assessment of the claimant's limitations from a treating physician, and a "voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ[.]"

Here, as noted above, the record lacked medical source statements from a treating physician or an opinion from a consultative examiner. The ALJ accordingly assigned "great" weight to IME Dr. Hadian, who examined Plaintiff in connection with his Worker's Compensation claim. T.34. Dr. Hadian's opinion, rendered in the context of a Worker's Compensation case, is incomplete. For example, although Dr. Hadian opined that Plaintiff could not lift more than 15 pounds, he did not indicate the frequency of this limitation (e.g., occasionally, frequently). Dr. Hadian stated, ambiguously, that Plaintiff "should refrain from duties that involve repetitive movements that put stress on his lower back." T.311. "[R]epetitive movements that put stress on his lower back" easily could include lifting, carrying, and stooping–all of which are required activities for sedentary work. See Social Security Ruling ("SSR") 96-9p, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK–IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE

OF SEDENTARY WORK, 1996 WL 374185, at *6, *7, *8 (S.S.A. July 2, 1996). Furthermore, Dr. Hadian's opinion does not include the amount that Plaintiff can sit, stand, or walk at one time and in total during an 8-hour workday.

Since the Court is ordering remand based on the incomplete analysis of Plaintiff's impairments vis-a-vis the requirements of Listing 1.04(A), the ALJ will have an opportunity to augment the record by seeking a medical source statement or RFC assessment from one of Plaintiff's treating physicians.

**C.    Erroneous Credibility Analysis (Plaintiff's Point IV)**

Under the regulations, an ALJ first must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms he alleges, and if so, the ALJ then must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. See 20 C.F.R. § 404.1529(a), ©.  Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the Regulations. See, e.g., Meadors v. Astrue, 370 F. App'x 179, 184 n. 1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)). An "ALJ's decision to discount a claimant's subjective complaints of pain" will be upheld only when

-16-

that decision is "supported by substantial evidence." Aponte v. Secretary Dept. of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984); see also Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) ("If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do . . . with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.") (citations omitted).

Here, the ALJ identified the correct legal standard for assessing credibility but failed to apply it, concluding summarily that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." It is erroneous for an ALJ to find a claimant's statements not fully credible because those statements are inconsistent with the ALJ's own RFC finding. E.g., e.g., Burton v. Colvin, No. 6:12-CV-6347 (MAT), 2014 WL 2452952, at *10 (W.D.N.Y. June 2, 2014) (citing Smollins v. Astrue, No. 11-CV-424, 2011 WL 3857123, at *11 (E.D.N.Y. Sept. 1, 2011); Mantovani v. Astrue, No. 09-CV-3957, 2011 WL 1304148, at *5 (E.D.N.Y. Mar. 31, 2011); see also Pepper v. Colvin, 712 F.3d 351, 367-68 (7th Cir. 2013) (criticizing such language as "meaningless boilerplate"). Because the assessment of a claimant's ability to work will often

depend on the credibility of his subjective complaints, it is illogical to decide a claimant's RFC prior to assessing his credibility. Otero v. Colvin, 12-CV-4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013); see also Molina v. Colvin, No. 13 Civ. 4989(AJP), 2014 WL 3445335, at *14 (S.D.N.Y. July 15, 2014). Using that RFC to discredit the claimant's subjective complaints then merely compounds the error. Otero, 2013 WL 1148769, at *7.

In addition to turning the credibility analysis on its head, the ALJ did not explain why Plaintiff's subjective complaints are not as disabling as he alleged. The ALJ engaged in no comparison of Plaintiff's statements concerning his subjective complaints with the objective medical evidence in the record. Where, as here, "the ALJ fails sufficiently to explain a finding that the claimant's testimony was not entirely credible, remand is appropriate." Valet v. Astrue, No. 10-CV-3282(KAM), 2012 WL 194970, *22 (E.D.N.Y. Jan. 23, 2012) (citation omitted).

**VIII.   Remedy**

Both parties have moved for judgment on the pleadings pursuant to Rule 12© of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). Here, however, the ALJ has misapplied the relevant legal

standards, making further administrative proceedings before the Commissioner necessary. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (quotation omitted). Although remand is not required "[w]here application of the correct legal standard could lead to only one conclusion," Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) (citation omitted), here the ALJ must further develop the record by requesting a medical source statement or RFC assessment from one of Plaintiff's treating physicians, re-analyze Plaintiff's impairments against the criteria of Listing 1.04(A), and possibly re-formulate Plaintiff's RFC. See, e.g., Azeez v. Astrue, No. 09-CV-3976(SLT), 2012 WL 959401, at *9 (E.D.N.Y. Mar. 21, 2012) (declining to reverse for calculation of benefits because the ALJ first "must properly weigh the treating physicians' opinions before a clear conclusion can emerge"); Kerr, 2010 WL 3907121, at *6 (declining to remand solely for calculation of benefits in case where ALJ's analysis of Listing 1.04(A) was deficient because there was "some objective medical evidence that Plaintiff did not have the requisite motor, reflex, or sensory losses" to meet that listing).

**IX. Conclusion**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt #10) is granted to the extent that the Commissioner's decision is reversed, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. Defendant's motion for judgment on

the pleadings (Dkt #11) is denied. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

                                        S/Michael A. Telesca

                                        _____
                                        HONORABLE MICHAEL A. TELESCA
                                        United States District Judge

DATED:   December 8, 2014
         Rochester, New York